UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

J.B.,

    Plaintiff,

  v.

CHAUTAUQUA COUNTY, et al.,

    Defendants.

21-CV-786-LJV
DECISION & ORDER

## **BACKGROUND**

On June 29, 2021, the plaintiff, J.B., commenced this action in New York State Supreme Court, Chautauqua County, under the New York Child Victims Act, N.Y. C.P.L.R. § 214-g.  Docket Item 1-1.  In the complaint, J.B. alleges that he or she suffered sexual abuse at the hands of his or her foster father more than 50 years ago and that the defendants—Chautauqua County and several of its employees sued as Does 1-10—were negligent in investigating, licensing, supervising, and monitoring foster families.  Docket Item 1-1.  On July 8, 2021, Chautauqua County removed the action to this Court based on diversity of citizenship.  Docket Item 1.

Presently pending before this Court is J.B.'s appeal, Docket Item 31, of Magistrate Judge Jeremiah J. McCarthy's decision and order denying J.B.'s motion to amend the case management order and refusing to consider J.B.'s motion to amend the complaint, Docket Item 30.  For the reasons that follow, this Court concludes that Judge

McCarthy erred. Whether or not an amendment to the complaint is necessary, leave to amend is granted and a new case management order shall be entered.

## **FACTS**[1]

More than 50 years ago, J.B. was in foster care and therefore "under the custody, care, and control of [Chautauqua County]." Docket Item 1-1 at ¶ 28. According to the complaint, "[i]n 1970, when [J.B.] was 9 to 10 years old, [J.B.] was sexually abused by their [sic] foster father, Mayes, at the foster home." *Id.* at ¶ 30. In 2021, after New York State opened a window for sexual abuse suits long after the limitations period had otherwise expired, N.Y. C.P.L.R. § 214-g, J.B. commenced this action to recover damages for that abuse, Docket Item 1-1. J.B. says that Chautauqua County and its employees are liable for negligently failing to protect J.B. *Id.* at ¶¶ 50-67.

The complaint generally refers to J.B.'s abuser as "UNKNOWN FOSTER FATHER (hereinafter, "PERPETRATOR")." *See id.* at ¶ 29; *see, e.g.*, *id.* at ¶¶ 33, 35-38, 47, 56, 65. In fact, paragraph 30, cited above, is the only reference in the complaint to the name "Mayes."

Chautauqua County removed the case to this Court on July 8, 2021, Docket Item 1, and on November 9, 2021, the case was referred to Judge McCarthy for all pre-trial,

---

[1] The facts are taken from the complaint, Docket Item 1-1; the underlying motion papers, Docket Items 21-26; Judge McCarthy's Decision and Order, Docket Item 30; and the current motion for reconsideration, response and reply, Docket Items 31, 35-36. As in a motion to dismiss, in considering a motion to amend, the Court accepts all the plaintiff's factual allegations as true. *Addison v. Reitman Blacktop, Inc.*, 283 F.R.D. 74, 80 (E.D.N.Y. 2011).

non-dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(A).  Docket Item 4.  Judge McCarthy scheduled an initial telephone pretrial conference for December 7, 2021.  Docket Item 5.  In anticipation of that conference, J.B.'s attorney filed a proposed pretrial order on November 23, 2021.  Docket Item 6.

Following the pretrial conference, Judge McCarthy entered a case management order setting various deadlines for discovery and filing motions.  Docket Item 8.  Most relevant here, Judge McCarthy set a deadline of May 31, 2022, for filing "all motions or stipulations to join other parties and to amend the pleadings."  *Id.* at ¶ 5.  The case management order also provided that

> **No extension of the above deadlines will be granted except upon a motion, filed prior to the deadline, showing good cause for the extension.  Absent truly exceptional circumstances, any motion for an extension shall be made at least one week prior to the deadline sought to be extended.  The parties are reminded that "a finding of 'good cause' depends on the diligence of the moving party".** *Parker v. Columbia Pictures Industries*, **204 F.3d 326, 340 (2d Cir. 2000).**

*Id.* at 3 (bold in original).

From January through April 2022, the parties exchanged Rule 26 initial disclosures, interrogatories, and documents.  Docket Item 25-1 at ¶¶ 9-15 and Exhibits A-E.  In response to J.B.'s demand for any records relating to J.B.'s time in foster care, Chautauqua County stated that it no longer had any documents and disclosed the County's record retention policy.  *Id.* at ¶¶ 14-15 and Exhibits D and E.  Throughout paper discovery, J.B. consistently referred to the foster father and alleged abuser as "Mayes."  *Id.* at ¶ 13 and Exhibit C.  And Chautauqua County relied on that during its record search.  Docket Item 25 at 14.

3

On May 12, 2022, faced with "a dearth of records regarding [p]laintif's foster care placement," J.B. sought educational records from the Chautauqua Lake Central School District. Docket Item 23 at ¶¶ 15-16; Docket Item 24 at 2-3. Those records were received by fax in J.B.'s attorney's office just four days later, on May 16, 2022, when J.B.'s attorney was out of the country for the week. Docket Item 23 at ¶ 16; *see also* Docket Item 23-2 (school records).

On June 13, 2022, in preparation for a deposition three days later, J.B. reviewed the educational records, and J.B.'s "recollection was refreshed" as to the identity of the foster parents, including the parent who abused J.B. Docket Item 23 at ¶¶ 17-18. More specifically, J.B. "was able to completely and definitively identify [the] foster parents as Earl and Donna Ellis, and name Earl Ellis as the perpetrator of [the] sexual abuse." *Id.* at ¶ 18. That same day, J.B.'s attorney notified Chautauqua County's attorney by telephone of the newly discovered facts and emailed copies of the documents to counsel. *Id.* at ¶ 20.

In a letter dated June 14, 2022, Docket Item 25-7, counsel for Chautauqua County alerted Judge McCarthy to the revelation that J.B.'s alleged abuser was not "Mayes" but rather Earl Ellis, and a telephone status conference was scheduled for the next day. Docket Items 17, 18. J.B.'s attorney responded to the letter in an email to Judge McCarthy asserting that the recently revealed information did not change J.B.'s theory of liability and that there was no reason to amend the complaint. Docket Item 25-8. During the telephone status conference, the parties discussed with Judge McCarthy whether the complaint as drafted was sufficient. Docket Item 23 at ¶ 21. Judge McCarthy concluded that an amended complaint was necessary, and he directed J.B. to

4

file a motion to amend the complaint on or before June 29, 2022.  Docket Items 18, 19; *see also* Docket Item 23 at ¶ 21.

After the parties agreed to extend J.B.'s time to move to amend, Docket Item 20, J.B. moved to amend the case management order and for leave to file an amended complaint, Docket Items 23, 24.  As required, J.B. attached a proposed amended complaint to the motion, Docket Item 23-1; the only substantive changes in the amended complaint replaced "UNKNOWN FOSTER FATHER" and "Mayes" with "foster father Earl Ellis."  *Id.* at ¶¶ 29-30.  On July 29, 2022, Chautauqua County opposed the motion, Docket Item 25, and on August 9, 2022, J.B. replied, Docket Item 26.  At oral argument on August 17, 2022, Judge McCarthy requested a supplemental filing addressing the impact of a case discussed during oral argument.  Docket Items 27, 28.  J.B. submitted the supplemental filing a week later.  Docket Item 29.

On September 1, 2022, Judge McCarthy issued a Decision and Order denying J.B.'s motion to amend the case management order and stating that J.B.'s motion to amend the complaint "will not be considered."  Docket Item 30 at 1.  Consistent with what he said at the June 2022 status conference, Judge McCarthy concluded that an amended complaint was necessary.  *Id.* at 3-4.  And Judge McCarthy also found that J.B. had failed to establish good cause to extend the deadline for motions to amend.  *Id.* at 4-6.

On September 15, 2022, J.B. timely moved for this Court to reconsider Judge McCarthy's Decision and Order under 28 U.S.C. § 636(b)(1)(A).  Docket Item 31.  Chautauqua County opposed J.B.'s motion for reconsideration, Docket Item 35, and J.B. replied on October 27, 2022, Docket Item 36.  This Court heard oral argument on

May 8, 2023.  Docket Item 38.  On May 19, 2023, Chautauqua County submitted a letter to this Court clarifying a matter discussed during oral argument.  Docket Item 39.

## **LEGAL PRINCIPLES**

"[W]ith respect to non-dispositive discovery disputes, the magistrate judge is afforded broad discretion which a court should not overrule unless this discretion is clearly abused." *Maxwell v. Becker*, 2015 WL 5793403, at *1 (W.D.N.Y. Sept. 30, 2015), quoting *Germann v. Consolidated Rail Corp.*, 153 F.R.D. 499, 500 (N.D.N.Y. 1994); *see also* 28 U.S.C. § 636(b)(1)(A) (providing that a district judge may reconsider a magistrate judge's decision on a non-dispositive order only "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law"); Fed. R. Civ. P. 72(a) ("[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law.").

This Court has carefully and thoroughly reviewed Judge McCarthy's Decision and Order; the record in this case; the motion for reconsideration, response, and reply; and the materials submitted to Judge McCarthy.  Based on that review, the Court grants J.B.'s motion for reconsideration, reverses the decision of Judge McCarthy, orders that a new case management order be issued, and grants J.B.'s motion to file an amended complaint.

**DISCUSSION**

Whether amendment of the complaint is necessary to replace "Mayes" and "UNKNOWN FOSTER FATHER" with Earl Ellis is an open question. On the one hand, the plaintiff's theory of the case does not hinge on the identity of the foster parent who allegedly abused J.B., and the person about whose identity J.B. was mistaken is not a party; on the other, the complaint names the person who allegedly caused the injury to J.B. as Mayes, and that clearly is incorrect. But regardless of whether the complaint must be amended, this Court finds that it may be amended under the unusual circumstances here and that the refusal to allow amendment was clear error.

"Mere delay, . . .absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 174 (S.D.N.Y. 2014) (internal citations omitted). In determining whether a party suffers prejudice as a result of an amendment, "a court considers, among other factors, whether an amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." *Id*. (internal citations omitted). But "the fact that the opposing party will have to undertake additional discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *Id.* (internal citations omitted). For several reasons, those factors require permitting the amendment here.

First, there is not even a hint of bad faith. Indeed, the alleged abuse occurred more than 50 years ago, Docket Item 1-1 at ¶ 30, and it is not surprising that J.B. initially could not remember the name of the alleged abuser. That is especially so

7

because the abuser was a foster parent, and J.B, apparently had been placed with more than one foster family as a child.  *See* Docket Item 31-1 at ¶ 8 (referring to J.B.'s "first foster care placement").  So any error in identifying the culprit is understandable and excusable, and any delay in correcting that error pales in comparison with the time between the alleged abuse and the statutory opening of the limitations window that permitted J.B. to bring the claim.

What is more, J.B. and J.B.'s lawyers acted as promptly as possible in remedying the mistake once they learned the correct name.  The same day that they realized the mistake—and less than two weeks after the deadline for motions to amend expired—plaintiff's counsel notified defense counsel about J.B.'s refreshed recollection.  *Id.* at ¶ 26.  The very next day, the court learned about the mistake.  Docket Item 25-7.  The plaintiff's attorney thought that an amendment of the pleadings was not necessary, but the court disagreed.  Docket Items 18, 19, 25-8.  So J.B. moved to extend the deadline for motions and to amend the complaint consistent with the court's direction by the extended deadline that the court set.  Docket Items 21-24.  Certainly that evidences commendable diligence on the part of J.B.'s counsel once they knew about the mistake.

So in a case where the events at issue occurred more than 50 years ago, the plaintiff learned about an error in the complaint two weeks after the expiration of the deadline to move to amend the pleadings.  Counsel began the process of fixing the mistake that same day and followed the court's instructions on how to request permission to amend.  Under those truly unusual circumstances, it would be unconscionable to deprive J.B. of his or her day in court.

And because depositions have not yet occurred, the prejudice to the defendant is minimal.  Of course, both sides will have to search for records involving Earl Ellis and his status as a foster parent.  But in a fifty-some-year-old case, that really is no different today than it was when the deadline for motions to amend expired a few months ago or when the action began a few years ago.

To be sure, counsel might be criticized for not having requested the school records that refreshed J.B.'s recollection a year or more sooner, when the window to bring old abuse claims opened and they commenced this case.  And there is no doubt that both sides wasted time chasing down "Mayes" and not Earl Ellis.  But the defendants might have sought those school records as well.  And regardless, the question is not whether J.B.'s lawyers might be blamed for a delay in pursuing discovery; the question is whether J.B. should be penalized for recalling the wrong name of the person who abused J.B. decades earlier—an error that was corrected as soon as J.B. knew about it.  In this Court's view, that question is an easy one to answer.

In sum, permitting J.B. to file an amended complaint serves the interest of justice—especially because J.B. sought leave to amend less than two weeks after the deadline expired and as soon as J.B. knew about the mistake that prompted the request to amend.  Under the circumstances here, that interest outweighs both the strict warning about deadlines in the pretrial order and the deference afforded to magistrate judges in matters like these.  This Court therefore grants J.B.'s motion for reconsideration and refers this matter back to Judge McCarthy.

## **CONCLUSION**

For the foregoing reasons, this Court grants J.B.'s motion for reconsideration. Docket Item 31.  Judge McCarthy's Decision and Order, Docket Item 30, denying J.B.'s motion to amend the case management order and refusing to consider J.B.'s motion to amend the complaint is vacated.  This matter is referred back to Judge McCarthy consistent with the prior referral order, Docket Item 4, for discovery and, if appropriate, the issuance of an amended case management order.  J.B. may file an amended complaint no later than June 30, 2023.

    SO ORDERED.

    Dated:  June 13, 2023
              Buffalo, New York

                                      *s/ Lawrence J. Vilardo*
                                    LAWRENCE J. VILARDO
                                    UNITED STATES DISTRICT JUDGE